SCANNED

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

FILED
CLERK'S OFFICE

04 - 30026- KPN

2004 FEB -9  A 10:40

U.S. DISTRICT COURT
DISTRICT OF MASS

| | |
|---|---|
| YOSEF STREICHER, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>WAVE SYSTEMS CORPORATION, JOHN E. BAGALAY, JR., STEVEN K. SPRAGUE and GERARD T. FEENEY,<br><br>Defendants. | ) No.<br>)<br>)<br>) **CLASS ACTION COMPLAINT**<br>) **FOR VIOLATION OF THE**<br>) **FEDERAL SECURITIES LAWS**<br>)<br>)<br>) **DEMAND FOR JURY TRIAL**<br>)<br>)<br>) |

## SUMMARY AND OVERVIEW

1.     This is a securities class action on behalf of all purchasers of the common stock of Wave Systems Corporation ("Wave" or the "Company") between July 31, 2003 and February 2, 2004 (the "Class Period"), against Wave and certain of its officers and directors for violations of the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Wave creates technologies and services to secure and sell digital information. The Company's EMBASSY technology is a hardware and software-based device that enables secure transaction processing and distributed information metering in users' personal computers.

3.     On December 18, 2003, the Company issued a press release in which it announced that the Securities and Exchange Commission ("SEC") was investigating certain public statements made by Wave in August 2003, as well as certain insider selling that occurred around the same time.

4.     The true facts, which were known by each of the defendants, but concealed from the investing public during the Class Period, were as follows:



        a.      the Company's IBM announcement dated August 4, 2003 would result in no direct revenue to the Company;

        b.      the Company's Intel announcement dated July 31, 2003 was actually immaterial and would not generate any revenue to the Company until 2004, if ever;

        c.      the so-called Intel contract did not require Intel to purchase even one piece of software; and

        d.      the number of Trusted Platform Module ("TPM")-enabled motherboards shipped over the course of 2003 and 2004 would be *de minimis*.

    5.     As a result of the defendants' false statements, Wave stock traded at inflated levels during the Class Period, increasing to as high as $4.53 per share on August 5, 2003, whereby the Company and the Company's top officers and directors sold more than $8.6 million worth of their own shares.

## JURISDICTION AND VENUE

    6.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated under Section 10(b) by the SEC [17 C.F.R. § 240.10b-5].

    7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

    8.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District and Wave conducts business in this District.

9.    In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

10.    Plaintiff Yosef Streicher purchased Wave common stock as described in the attached certification and was damaged thereby.

11.    Defendant Wave creates technologies and services to secure and sell digital information. The Company's EMBASSY technology is a hardware- and software-based device that enables secure transaction processing and distributed information metering in users' personal computers.

12.    Defendant John E. Bagalay, Jr. ("Bagalay") was the Chairman of Wave.

13.    Defendant Steven K. Sprague ("Sprague") was the President and Chief Executive Officer of Wave. During the Class Period, Sprague sold more than $1.0 million worth of his Wave stock.

14.    Defendant Gerard T. Feeney ("Feeney") was the Senior Vice President of Finance and Administration, CFO and Secretary of Wave. During the Class Period, Feeney sold more than $500,000 worth of his Wave stock.

15.    Defendants Bagalay, Sprague, and Feeney are referred to as the "Individual Defendants".

16.    During the Class Period, the Individual Defendants, as senior executive officers and a director of Wave were privy to confidential and proprietary information concerning Wave,

3

its operations, finances, financial condition, and present and future business prospects. The
Individual Defendants also had access to material, adverse, non-public information concerning
Wave as discussed in detail below. Because of their positions with Wave, the Individual
Defendants had access to non-public information about its business, finances, products, markets,
and present and future business prospects via access to internal corporate documents,
conversations, and communications with other corporate officers and employees, attendance at
management and board of directors meetings and committees thereof, and via reports and other
information provided to them in connection therewith. Because of their possession of such
information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts
specified herein had not been disclosed to, and were being concealed from, the investing public.

        17.    The Individual Defendants are liable as direct participants in, and as co-
conspirators with respect to, the wrongs complained of herein. In addition, the Individual
Defendants, by reason of their status as senior executive officers and a director were "controlling
persons" within the meaning of Section 20 of the Exchange Act and had the power and influence
to cause the Company to engage in the unlawful conduct complained of herein. Because of their
positions of control, the Individual Defendants were able to and did, directly or indirectly, control
the conduct of Wave's business.

        18.    The Individual Defendants, because of their positions with the Company,
controlled and/or possessed the authority to control the contents of its reports, press releases, and
presentations to securities analysts, and through them, to the investing public. The Individual
Defendants were provided with copies of the Company's reports and press releases alleged herein
to be misleading, prior to or shortly after their issuance and had the ability and opportunity to

4

prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

19.     As senior executive officers and/or a director and as controlling persons of a publicly-traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and which was traded on the NYSE and governed by the federal securities laws, the Individual Defendants had a duty to disseminate promptly accurate and truthful information with respect to Wave's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Wave's common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

20.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Wave's securities by disseminating materially false and misleading statements and/or concealing material, adverse facts. The scheme: (i) deceived the investing public regarding Wave's business, operations, and management and the intrinsic value of Wave securities; and (ii) caused Plaintiff and the other members of the Class to purchase Wave's securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all those who purchased the securities of Wave during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are

Defendants, the officers and directors of the Company during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

22.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Wave common shares were a publicly traded security. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Wave or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

23.     Plaintiff's claims are typical of the claims of the Class, as all Class members are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

24.     Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in class and securities litigation.

25.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

        a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

6

b.      whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Wave; and

c.      to what extent the members of the Class have sustained damages and the proper measure of damages.

26.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## BACKGROUND

27.    Wave was incorporated in Delaware in August of 1988 under the name of Indata Corp., and changed its name to Cryptologics International, Inc. in December of 1989 before it settled on the name of Wave Systems Corp. in January of 1993.  The Company made its initial public offering on August 31, 1994 at a price to the public of $5.00 per share.  Until October 3, 1997, the Company's stock traded on The Nasdaq National Market tier of the Nasdaq.  From October 3, 1997 to October 24, 1997, the stock traded on the Nasdaq Small Cap market before being delisted from the exchange for not meeting minimum listing requirements.  By year-end 1997, the Company had burned through some $48 million, and the December balance sheet showed a total of $758,000 in cash and a working capital deficit of some $600,000.  KPMG Peat Marwick noted a "going concern" risk in their independent auditor's report.

28.    The Company managed to raise enough money to keep going by issuing stock and convertible securities in small increments through the end of 1997 and early 1998. The Company raised $800,000 by issuing 800,000 shares of stock and 160,000 warrants to six accredited investors in a private placement in September 1997. In October of the same year, the Company raised another $2.25 million by issuing 112,500 shares of convertible stock to another investor. In March of 1998, the Company raised another $3 million by issuing more convertible stock.

29.    The Internet stock boom came along at the perfect time, and Wave caught it in full swing in March of 1999, when it was able to sell just over 2 million shares at $11 per share to a group of institutional investors, raising $23 million. This financing alleviated any danger of running out of cash in the short term. The Company was relisted on the Nasdaq, and began trading again on April 6, 1999, closing that day at $23.50 per share. However, in July 2003, the Company's share price had plummeted to less than $1, and with that drop, the Company's officers lost their ability to raise any capital for the Company or to line their own pockets via insider selling. The defendants then formulated a scheme to re-inflate the Company's shares by associating the Company "publicly" with two of the World's biggest technology companies – Intel and IBM. This, defendants believed, would trick the public into believing that the Company had new lifelines which would infuse profits into the Company via agreements with these companies. With the "appearance" of two new separate revenue streams, defendants sought to, and did, raise monies via a private placement to keep the Company on life support in addition to pocketing over $1.5 million in insider trading proceeds.

8

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS
## ISSUED DURING THE CLASS PERIOD

30.    On July 31, 2003, the Company issued a press release entitled "Wave Systems

Announcement." The press release stated in part:

> Wave Systems Corp. announced an agreement today with Intel
> Corporation that will help enable both companies to accelerate the
> development and deployment of trusted applications and services
> for safer computing on personal computer platforms.
>
> The agreement will enable Intel to bundle Wave's software
> and services with a future Intel desktop motherboard, targeted for
> trusted computing platforms.
>
> "Wave helps fill a critical requirement for trusted
> computing services," said Michelle Johnston, acting director of
> marketing for Intel Desktop Board Operations. "We believe the
> EMBASSY® Trust Suite software will provide good value for our
> customers looking for trusted computing applications."
>
> "Wave has been working closely with Intel on the
> development of application and service solutions," said Brian
> Berger, senior vice president, Global Business Development, Wave
> Systems. "Both companies believe that in order to accelerate
> adoption in the marketplace, it is critical to identify and offer an
> attractive introductory set of services and high value applications.
> We are delighted to be working with Intel by providing solutions
> for this emerging market.
>
> "Wave believes that a portfolio of services will make
> trusted computing an important part of the personal computing
> market going forward. It is our job, to work with industry leaders
> like Intel, to help identify and develop those services that will bring
> the most value to the enterprise - as trusted hardware is deployed
> and a more secure computing environment becomes a reality."
> Berger said.

31.    On August 4, 2003, the Company issued a press release entitled "Wave Systems

Makes Enterprise Applications More Secure Than Ever; IBM's Independent Software Vendor

(ISV) Program Helps Wave Systems Create More Secure Applications for the Enterprise User."

The press release stated in part:

> Wave Systems Corp. today announced that the new Document Manager Vault and SmartSignature security software applications in Wave's EMBASSY® Trust Suite client software family ***work with*** the IBM Embedded Security Subsystem, a hardware and software-based security solution available on select ThinkPad notebooks and ThinkCentre desktops, to create more secure applications for the business user.
>
> The compatibility of Wave's security software applications with IBM's hardware and software security solution is a result of Wave's successful participation in IBM's Independent Software Vendor program. ***This partnership is another example of IBM's commitment to help independent software vendors use IBM's hardware and software-based security system to make computing as secure as possible for the end-user.***
>
> "The early stages of any emerging market are critical. IBM has clearly established their leadership in trusted computing with their family of Embedded Security System personal computers," said Lark Allen, executive vice president, Wave Systems. ***"Wave's partnership with IBM will significantly help us in our objective to deliver open and interoperable solutions to business customers as trusted computing continues to evolve."***
>
> Leveraging the IBM security chip for personal computers, the Wave EMBASSY Trust Suite Client Business Edition includes the first of many new applications aimed at business users: Wave's Document Manager Vault and SmartSignature. Wave's EMBASSY Trust Suite represents one of the first portfolios of user software applications, administrative tools, and trust-based systems developed specifically around the new Trusted Computing Group (TCG) specification.
>
> Wave's Document Manager Vault application offers a user-controlled vault for storage of private data, such as encrypted files and folders on personal computers. Document Manager Vault offers the choice of a simple drag-and-drop mechanism, as well as a set of integrated plug-ins for popular office tools to encrypt and decrypt any type of file on a local PC. ***By using IBM's Embedded***

10

*Security Subsystem in conjunction with Document Manager*
*Vault, sensitive data is protected even if the PC is lost or stolen.*

32.    On August 5, 2003, defendant Feeney sold 100,000 Wave shares at $5.00 per

share for proceeds of $500,000, cutting his share ownership by 50%.

33.    On August 6, 2003, defendant Sprague sold 150,000 Wave shares at $3.14-$3.47

per share for proceeds of $492,636, cutting his share ownership by 20%.

34.    On November 13, 2003, the Company issued a press release entitled "Wave

Systems Provides Update on Corporate Progress and Reviews Q3/Nine Months Results." The

press release stated in part:

> Wave Systems Corp., a leader in delivering trusted computing
> applications and services with advanced products, infrastructure
> and solutions across multiple trusted platforms, today reported
> results for its third quarter and nine months ended September 30,
> 2003 and reviewed significant recent corporate developments.
>
>         * * *
>
> *Steven Sprague, Wave's president and CEO, said, "We*
> *can now clearly see the growing momentum for trusted*
> *computing in the marketplace, and we expect substantial growth*
> *in volumes over the course of the next four quarters.*
>
>   "Wave has clearly focused in establishing technological
> and market leadership in this space as a services and infrastructure
> provider. We have delivered products that are easy to install, easy
> to configure, easy to use and are what business users really need.
>
> "We continue to add functionality and capability to the
> EMBASSY® Trust Suite tapping into Wave's expertise in building
> trusted computing services and infrastructure and responding to the
> needs of the marketplace. Wave's ETS works seamlessly on all six
> Trusted Computing Group-compliant, commercially available
> platforms today. We are now focusing on delivering to the market
> a portfolio of powerful client and server software solutions that we

expect will give IT managers exceptional life cycle management
capabilities and impressive cost-of-ownership results."

35.    On November 19, 2003, with the Company's shares inflated, the Company issued

a press release entitled "Wave Systems Completes $7.1 Million Private Placement Financing."

The press release stated in part:

> Wave Systems Corp., a leading developer of trusted computing
> solutions and services, announced today that it has completed a
> $7.1 million private placement of Class A common stock and
> warrants with a group of institutional and accredited investors.
> ***The financing is intended to fund Wave Systems' ongoing
> operations, specifically its sales and marketing efforts, as well as
> its engineering, development and customer support teams and its
> general corporate overhead.***
>
> The private placement consists of 3,725,263 shares of
> common stock priced at $1.90 per share as well as warrants to
> purchase 1,095,227 shares of the company's common stock at an
> exercise price of $2.62 per share. If exercised in their entirety, the
> warrants would generate an additional $2.9 million in gross
> proceeds to Wave. J. P. Carey Securities acted as the agent for the
> private placement.

36.    On December 18, 2003, the Company issued a press release entitled "Wave

Systems Notified of SEC Investigation." The press release stated in part:

> Wave Systems Corp. today reported that the Securities and
> Exchange Commission has commenced a formal investigation into
> certain matters relating to Wave. The SEC's investigative order,
> received by Wave on December 17, 2003, relates to certain public
> statements made by Wave during and around August 2003, as well
> as certain trading in Wave's securities during such time.

37.    Between January 12, 2004 and January 14, 2004, defendant Sprague sold 307,500

Wave shares at $1.70-$1.80 per share for proceeds of $528,875.

12